<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL E. CRANE,<br><br>    Plaintiff,<br><br>    v.<br><br>JACQUELINE CRANE and JOSEPH CANDELA,<br><br>    Defendants. | No. 23cv01527 (EP)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Michael Crane ("Michael") alleges that Defendants Jacqueline Crane[1] ("Jacqueline") and Joseph Candela[2] ("Joseph") unlawfully deprived Michael of his property. D.E. 8 ("Am. Compl."). Previously, the parties litigated their aunt's will in the state probate court, where Michael alleged that his personal property was stolen by Defendants. D.E. 16-6 at 44-51[3] ("Probate Answer"). Michael's pleadings, including claims against Defendants, were dismissed with prejudice because he violated court orders. D.E. 16-4 at 4 ("Sep. Order"). Now, Jacqueline moves to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), D.E. 16-2 ("Jacqueline Mot."), and Joseph moves to dismiss pursuant to Rule 12(b)(6), D.E. 14-1 ("Joseph Mot."). Because the probate exception divests this Court of subject-matter jurisdiction, the motions will be **GRANTED** and Michael's claims are **DISMISSED** *without prejudice*.[4]

---

[1] Michael's sister.
[2] Jacqueline's son.
[3] The page numbers this Court refers to are the ECF page numbers.
[4] The motions are decided without oral argument pursuant to Local Civil Rule 78.1.

I.   **BACKGROUND**[5]

   A.  **Factual Background**

In 2020, Rhoda Crane[6] ("Rhoda") and then Joyce Crane[7] ("Joyce") died.  Am. Compl. ¶¶ 6, 8, 11.  Rhoda had a will, but Joyce died intestate.  *See* Jacqueline Mot. ¶¶ 4, 6.  Michael and Jacqueline are the only heirs to the decedents.  *Id.* ¶ 6.  Rhoda had a property in Englewood, New Jersey ("Englewood Property"), that Michael would routinely visit.  Am. Compl. ¶¶ 12, 14.  Michael had lawful access to the Englewood Property and stored valuables there, including diamonds, coins, an oil painting, and Bruce Springsteen memorabilia ("Valuables").  *Id.* ¶ 14.  The Valuables are worth approximately five million dollars.  *Id.* ¶¶ 19, 20, 22.  Between August 2020 and February 2021, the Valuables disappeared from the Englewood Property.  *Id.* ¶¶ 30, 36.

   B.  **Procedural History**

      *1.  Probate court proceedings*

After Rhoda and Joyce died, Jacqueline filed a probate action against Michael in Bergen County Superior Court, Chancery Division, Probate Part.  *See* Probate Answer at 2.  Michael counterclaimed against Jacqueline, including conversion of precious gems, coins, furniture, artwork, and other unnamed property, and for fraudulent concealment by transferring assets between herself and Joseph ("Probate Claims").  *Id.* at 44, 47-48.  Michael also crossclaimed against Joseph, including conversion of money from Joyce's account and unjust enrichment.  *Id.* at 48-50.  Michael's requested relief included monetary damages, but not for the items to be returned to him.  *Id.* at 51.

---

[5] Except where otherwise noted, these facts derive from Michael's well-pled factual allegations in the Amended Complaint and reasonable inferences are drawn in his favor.
[6] Michael and Jacqueline's aunt.
[7] Michael and Jacqueline's mother and sister to Rhoda.

2

On January 26, 2021, the probate court ordered Michael to provide the keys to one of Rhoda's properties. D.E. 16-8 at 23. He refused. *Id.* at 24. On July 16, 2021, the court ordered Michael to allow the inspection of a New York property and if he failed to comply, then his counter and crossclaims would be dismissed. *Id.* at 27. Michael refused again and the court dismissed his pleadings without prejudice. *Id.* On August 11, 2021, the court further ordered Michael to not interfere with the finances of another property, which Michael then violated. *Id.* at 27-28. Because of his repeated violations of court orders, the court dismissed Michael's pleadings with prejudice, on September 15, 2021. *Id.* at 28-29. Judgment was entered in 2022. *Id.* at 2. Michael has continued to litigate in probate court and in March 2023, requested the court to compel accountings for tangible property stored at the Englewood Property. D.E. 16-9 at 3.

2. *Federal proceedings*[8]

On May 5, 2023, Michael filed the claims pending before this Court. *See* Am. Compl. ¶ 1. He brings conversion, unjust enrichment, and civil conspiracy claims against Defendants for the Valuables that disappeared from the Englewood Property. *Id.* ¶¶ 45-48, 67-76. Michael alternatively claims Jacqueline breached her fiduciary duty and was negligent for taking sole possession of the Englewood Property and then failing to secure the Valuables. *Id.* ¶¶ 49-66. Michael has requested monetary damages, but not that the Valuables be returned. *Id.* ¶¶ 48, 59, 66, 70, 76.

Jacqueline moves to dismiss the Amended Complaint under Rule 12(b)(1), arguing that this Court has no subject-matter jurisdiction because either the *Rooker-Feldman* doctrine or the

---

[8] This Court appears to have diversity jurisdiction because Michael, a citizen of New York, is suing Defendants, both citizens of New Jersey, for an amount in controversy exceeding $75,000. *See* Am. Compl. ¶¶ 1-3; 28 U.S.C. § 1332. However, as discussed below, the probate exception divests this Court of subject-matter jurisdiction.

3

probate exception divests this Court of jurisdiction. Jacqueline Mot. at 5. Jacqueline also argues that Michael's claims should be dismissed under Rule 12(b)(6) because his claims are precluded by res judicata and the entire controversy doctrine because he already litigated them in probate court. *Id.* Joseph moves to dismiss the current claims under Rule 12(b)(6), joining Jacqueline's argument and additionally arguing that there is insufficient factual support for the allegations against him. *See* Joseph Mot. at 4.

## II.   LEGAL STANDARDS

The standard for dismissing a complaint for lack of subject-matter jurisdiction under Rule 12(b)(1) depends on whether the motion is a factual attack or a facial attack. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A factual attack undermines the factual basis of jurisdiction and the court can "weigh and consider evidence outside the pleadings." *Davis*, 824 F.3d at 346 (quoting *Const. Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)). Facial attacks do not dispute facts and so the court must "consider the allegations of the complaint as true." *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). This Court will take Jacqueline's motion as a facial attack.

To survive a Rule 12(b)(6) motion to dismiss for a failure to state a claim, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On such a motion, "a court may consider matters of public record, including another court's opinion, without causing the motion to be treated as one for summary judgment." *In re Plum Baby Food Litig.*, 637 F. Supp. 3d 210, 220 n.4 (D.N.J. 2022).

4

III.  ANALYSIS

This Court finds the *Rooker-Feldman* doctrine does not apply. Nevertheless, the probate exception divests this Court of subject-matter jurisdiction. However, if this Court does have subject-matter jurisdiction, then res judicata and the entire controversy doctrine still bar Michael's claims.

A.  ***Rooker-Feldman* Is Not Applicable Here**

The *Rooker-Feldman* doctrine does not divest this Court of subject-matter jurisdiction because Michael is not complaining about injuries caused by the probate court's judgment. The *Rooker-Feldman* doctrine occupies a "narrow ground." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 284. There are four elements required for the *Rooker-Feldman* doctrine to apply: "(1) the federal plaintiff lost in state court; (2) the plaintiff complains of injuries caused by the state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (cleaned up) (quoting *Exxon Mobil*, 544 U.S. at 284). All four elements of the *Rooker-Feldman* doctrine need to be satisfied for the case to be dismissed. *Holton v. Henon*, 832 F. App'x 781, 784 (3d Cir. 2020). Because the second element is not satisfied, the *Rooker-Feldman* doctrine does not apply.

The other three elements, however, are satisfied. In 2021, Michael brought claims against Defendants in the probate court and that court dismissed his claims with prejudice. Sep. Order ¶ 7. The judgment was then entered in 2022. D.E. 16-8 at 2. That means that Michael lost in state

court and the judgment was rendered before he filed this suit in 2023, thus satisfying the first and third elements. The fourth element is also satisfied here. The probate court adjudicated Michael's ownership claims against Defendants when it dismissed his pleadings with prejudice. Sep. Order ¶ 7. Here, Michael is bringing the same ownership claims against Defendants and so is inviting this Court to rule on his claims against them. By doing so, he is inviting this Court to review and reject the probate court's decision, which satisfies the fourth element.

The second element, which may "be thought of as an inquiry into the source of the plaintiff's injury," *Great Western*, 615 F.3d at 166 (citing *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 (3d Cir.2006)), is not satisfied. When a "plaintiff asserts injury caused by the defendant's actions and not by the state-court judgment, [*Rooker-Feldman*] is not a bar to federal jurisdiction." *Id.* at 167. Therefore, "[t]he critical task is . . . to identify those federal suits that profess to complain of injury by a third party, but actually complain of injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" *Id.* (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 88 (2d Cir. 2005)).

The timing of the injury is a "useful guidepost." *Id.*; *see also McKithen v. Brown*, 481 F.3d 89, 98 (2d Cir. 2007) ("[A] party is not complaining of an injury 'caused by' a state-court judgment when the exact injury of which the party complains in federal court existed prior in time to the state-court proceedings, and so could not have been 'caused by' those proceedings."); *Am. Music Theater Festival, Inc. v. TD Bank, N.A.*, No. 10-CV-00638, 2011 WL 611837, at *4 (E.D. Pa. Feb. 18, 2011) ("The majority of Plaintiffs' claims are based upon Defendant's actions in the years preceding the state-court litigation. . . . [*Rooker-Feldman*], then, cannot apply to these claims.").

Michael's claims here involve the same injury and conduct as his claims in the probate court. *Compare* Am. Compl. ¶¶ 6-76, *with* Probate Answer at 26-51. Specifically, in the probate

court he asserted that Defendants, in 2020, tortiously deprived him of his gems, coins, artwork, furniture, and other property. Probate Answer at 44. It was after Michael's injury occurred that he filed the Probate Action. *Id.* at 54. Now, he is asserting that Defendants, in 2020 and early 2021, tortiously deprived him of the Valuables, which are his gems, coins, artwork, and Springsteen memorabilia. Am. Compl. ¶¶ 23-76. He is not arguing about injuries caused by the probate court's judgment because without the judgment, Michael would still be injured. *See Copeland v. C.A.A.I.R.*, No. 21-5024, 2023 WL 3166345, at *7 (10th Cir. May 1, 2023) ("To establish causation, an element of the federal-court claim must be that the state court wrongfully entered its judgment. A state-court judgment does not cause an injury . . . if the plaintiff could raise the same claims even if there had been no state-court proceedings.") (cleaned up). Accordingly, the *Rooker-Feldman* doctrine does not divest this Court of subject-matter jurisdiction.

### B.  The Probate Exception Divests Subject-Matter Jurisdiction

This Court lacks subject-matter jurisdiction because the current action falls under the probate exception. Thus, Michael's claims must be dismissed without prejudice. *Associated Builders & Contractors W. Pa. v. Cmty. Coll. of Allegheny Cnty.*, 81 F.4th 279, 291 (3d Cir. 2023) ("[A] dismissal for lack of subject matter jurisdiction is not an adjudication on the merits and thus should be ordered without prejudice.") (quoting *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 182 (3d Cir. 1999)).

The probate exception is a carveout from diversity jurisdiction. *See Marshall v. Marshall*, 547 U.S. 293, 308 (2006) (citing *Markham v. Allen*, 326 U.S. 490, 494 (1946)). The probate exception applies when a court "is endeavoring to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume in rem jurisdiction over property that is in the custody of the probate court." *Three Keys Ltd. v. SR Util. Holding Co*, 540 F.3d 220, 227 (3d Cir. 2008). The

7

probate exception divests this Court of subject-matter jurisdiction because prongs two and three apply.

Prong two applies because Michael's claims entail deciding an estate's property rights. Michael's claims all center around the deprivation of his alleged Valuables. Am. Compl. ¶¶ 45-76. His claims require ownership over the property, which would require this Court to decide who has ownership. But deciding whether property belongs to an estate is administering the estate. *See Matter of Est. of Lagano*, No. 20-CV-10793, 2020 WL 9172828, at *5 (D.N.J. Nov. 25, 2020) (citing *Est. of Czarnetzki v. Andrews*, No. CIV. 2:12-06923, 2012 WL 5869159, at *2 (D.N.J. Nov. 19, 2012)), *adopted sub nom. Trobiano v. Lagano*, No. CV 20-10793, 2021 WL 1339198, at *1 (D.N.J. Apr. 9, 2021). As prong two of the probate exception divests this Court of subject-matter jurisdiction, Michael's claims must be dismissed without prejudice.

Likewise, prong three would also divest subject-matter jurisdiction because this Court would have to assume jurisdiction over property that is in the custody of the probate court. While Michael's claims are characterized as *in personam*, that characterization is not dispositive. *See Three Keys Ltd.*, 540 F.3d at 230 ("Each of these claims, whether characterized as an *in personam* action or not, requires the District Court to 'endeavor[ ] to dispose of property that is in the custody of a state probate court,' which is prohibited by the probate exception.") (alteration in original) (quoting *Marshall*, 547 U.S. at 312); *Dyno v. Dyno*, No. 20-3302, 2021 WL 3508252, at *3 (3d Cir. Aug. 10, 2021) ("The practical effect of the relief, rather than the precise labelling . . . is dispositive."). Here, the Valuables were at the Englewood Property when Rhoda died. Am. Compl. ¶ 15. Michael's claims in the probate court concerned, essentially, the Valuables. Probate Answer at 44. In 2023, Michael filed a complaint in the probate court to compel accountings for tangible property stored at the Englewood Property, which would include the Valuables. D.E. 16-

8

9 ¶¶ 8-9, 13. The Valuables have been involved in probate proceedings since almost the beginning and have continued to be involved. Deciding ownership claims would require this Court to assume jurisdiction over the Valuables. *Cf. New Jersey ex rel. McDonald v. Copperthwaite*, No. 3:13-CV-05559, 2014 WL 2208159, at *13 (D.N.J. May 28, 2014) (dismissing some of plaintiff's claims because determining plaintiff's ownership "would impermissibly foreclose such determinations" by the state court). So, while it is characterized as being *in personam*, the nature of the action means that this Court would have to disturb property in the state court and so violate the probate exception.

Michael argues that the current claims could not have been brought in the probate court because that court would lack subject-matter jurisdiction. D.E. 21 at 10. While the probate court specializes in probate matters, it can exercise ancillary jurisdiction over legal claims that are "germane to or grow out of the subject matter of the equitable jurisdiction." *In re Est. of Mech.*, No. BER-P-208-03, 2005 WL 1252360, at *3 (N.J. Super. Ct. Ch. Div. May 13, 2005) (quoting *Fleischer v. James Drug Stores*, 1 N.J. 138, 150 (1948)). Michael's pending claims—conversion, breach of fiduciary duty, negligence, unjust enrichment, and civil conspiracy—all concern the ownership of the Valuables, which are connected to the estate. Because the probate court was administering the estate, which includes deciding property rights, Michael's current claims would have been germane to those matters. Consequently, the probate court would have had jurisdiction over Michael's current claims. While Michael's claims must be dismissed because this Court has no subject-matter jurisdiction, for completeness, this Court will also analyze the res judicata and entire controversy doctrine arguments.

**C. Res Judicata and the Entire Controversy Doctrine Preclude Michael's Claims**

Assuming this Court has jurisdiction, res judicata and the entire controversy doctrine still bar Michael's claims because he litigated or should have litigated the current claims in probate court.

"Res judicata, also known as claim preclusion, bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit." *Duhaney v. Att'y Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010) (quoting *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008)). Federal courts must follow state law in determining whether a state court's judgment is preclusive. *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). In New Jersey, res judicata requires that

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

*McNeil v. Legis. Apportionment Comm'n of State*, 177 N.J. 364, 395 (2003) (quoting *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 124 N.J. 398, 412 (1991)). Here, all three elements are met.

The first element is met because the probate court dismissed Michael's claims with prejudice. Michael's claims were dismissed with prejudice because he failed to comply with court orders. *See* Sep. Order at 3-4. While the court was not explicit under what rule his claims were dismissed under, Rule 4:37-2(a) allows dismissal for a failure to follow court orders. N.J. Ct. R. 4:37-2(a). Subsection (d) gives effect to dismissals with prejudice by stating that "[u]nless the order of dismissal otherwise specifies, a dismissal under R. 4:37-2(b) or (c) and any dismissal not specifically provided for by R. 4:37, other than a dismissal for lack of jurisdiction, operates as an adjudication on the merits." N.J. Ct. R. 4:37-2(d). While subsection (d) does not specifically address dismissals with prejudice under subsection (a), the New Jersey Supreme Court has stated

10

that dismissals "with prejudice constitute[] an adjudication on the merits as fully and completely as if the order had been entered after trial." *A.T. v. Cohen*, 231 N.J. 337, 351 (2017) (internal quotation marks removed) (quoting *Velasquez v. Franz*, 123 N.J. 498, 507 (1991)). Because his claims were dismissed with prejudice, there was an adjudication on the merits and the first element is met.

The second element is met because the parties here are the same. The exact orientation of Michael, Joseph, and Jacqueline at the state level were initially defendants and plaintiff, respectively. But Michael's Probate Action aligned himself to be a plaintiff and Jacqueline and Joseph to be defendants. Thus, the parties here are identical. *See Woo-Padva v. Midland Funding, LLC*, No. A-3575-17T3, 2019 WL 3540494, at *4 (N.J. Super. Ct. App. Div. Aug. 5, 2019) (holding that res judicata barred plaintiff from raising a claim that could have been brought as a defense to a prior action against her).

Finally, the third element is met because the current claims are based on the same cause of action. "For the purposes of res judicata, causes of action are deemed part of a single 'claim' if they arise out of the same transaction or occurrence." *Watkins*, 124 N.J. at 413. As mentioned previously, Michael in the probate court claimed that Defendants unlawfully deprived him of his gems, coins, artwork, furniture, and other property not specified. Probate Answer at 44; *see also* D.E. 16-5 at 4, 6, 8-11. Now, Michael is claiming in this Court that Defendants unlawfully deprived him of gems, coins, artwork, and Springsteen memorabilia. Am. Compl. ¶¶ 45-48, 67-76. The requested relief, monetary damages, is the same. *Compare id.* ¶¶ 48, 59, 66, 70, 76, *with* Probate Answer at 51. Supportive evidence, such as witnesses, would be the same for both claims. Because Michael's federal claims arise out of the same occurrence as his state claims, the third element has been met. With all three elements being met, res judicata would bar Michael's claims.

The entire controversy doctrine works in tandem with res judicata in barring Michael's claims. *See* N.J. Ct. R. 4:30A ("Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine."). "[T]he central consideration [in whether claims should have been brought in the previous action] is whether the claims . . . arise from related facts or the same transaction or series of transactions." *Wadeer v. N.J. Mfrs. Ins. Co.*, 220 N.J. 591, 605 (2015). As discussed above, the claims here arise from the same transaction as the claims in the probate court. Michael had the opportunity to litigate his current claims at the state level and allowing his claims in this Court would undermine the principles underlying the entire controversy doctrine: completeness in litigation, fairness to the parties, and efficiency. *Dowdell v. Univ. of Med. & Dentistry of N.J.*, 94 F. Supp. 2d 527, 534 (D.N.J. 2000) (citing *DiTrolio v. Antiles*, 142 N.J. 253, 267 (1995)). Thus, res judicata and the entire controversy doctrine provide an alternative basis for dismissing Michael's claims.

Because this Court will dismiss Michael's claims, it will not address the factual sufficiency of his pleading as raised by Joseph in his Rule 12(b)(6) motion.

## IV.   CONCLUSION

For the reasons set forth above, this Court will **GRANT** Defendants' respective motions to dismiss because the probate exception divests this Court of subject-matter jurisdiction. Alternatively, res judicata and the entire controversy doctrine would also bar Michael's claims and require dismissal.

An appropriate Order follows.

Dated: March 12, 2024

Evelyn Padin, U.S.D.J.

13